UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| SANDRA M. FAMBRINI,<br>  Plaintiff,<br>v.<br>ANDREW SAUL,<br>  Defendant. | Case No. 4:19-cv-03701-KAW<br><br>**ORDER DENYING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT AN GRANTING DEFENDANT'S CROSS-MOTION FOR SUMMARY JUDGMENT**<br><br>Re: Dkt. Nos. 17, 18 |

Plaintiff Sandra M. Fambrini seeks judicial review, pursuant to 42 U.S.C. § 405(g), of the Commissioner's final decision, and the remand of this case for payment of benefits, or, in the alternative, for further proceedings.

Pending before the Court is Plaintiff's motion for summary judgment and Defendant's cross-motion for summary judgment. Having considered the papers filed by the parties, and for the reasons set forth below, the Court DENIES Plaintiff's motion for summary judgment, and GRANTS Defendant's cross-motion for summary judgment.

## I.   BACKGROUND

Plaintiff filed for Title II and Title XVI benefits on August 6, 2016. (Administrative Record ("AR") 170, 185.) Plaintiff asserted disability beginning July 15, 2014. (AR 157, 171.) The Social Security Administration ("SSA") denied Plaintiff's application initially and on reconsideration. (AR 186-90, 194-98.) Plaintiff then requested a hearing before an Administrative Law Judge ("ALJ"); the hearing was held on September 11, 2018. (AR 30.)

Following the hearing, the ALJ denied Plaintiff's application on February 8, 2019. (AR 27-47.) A request for review of the ALJ's decision was filed with the Appeals Council on May 9, 2019. (AR 1.) The Appeals Council denied Plaintiff's request for review on May 9, 2019. (AR

1.) On June 25, 2019, Plaintiff commenced this action for judicial review pursuant to 42 U.S.C. § 405(g).  (Compl., Dkt. No. 1.)

On November 25, 2019, Plaintiff filed her motion for summary judgment.  (Pl.'s Mot., Dkt. No. 17.)  On December 23, 2019, Defendant filed an opposition and cross-motion for summary judgment.  (Def.'s Opp'n, Dkt. No. 18.)  No reply was filed.

## II.  LEGAL STANDARD

A court may reverse the Commissioner's denial of disability benefits only when the Commissioner's findings are 1) based on legal error or 2) are not supported by substantial evidence in the record as a whole.  42 U.S.C. § 405(g); *Tackett v. Apfel*, 180 F.3d 1094, 1097 (9th Cir. 1999).  Substantial evidence is "more than a mere scintilla but less than a preponderance"; it is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Id.* at 1098; *Smolen v. Chater*, 80 F.3d 1273, 1279 (9th Cir. 1996).  In determining whether the Commissioner's findings are supported by substantial evidence, the Court must consider the evidence as a whole, weighing both the evidence that supports and the evidence that detracts from the Commissioner's conclusion.  *Id.* "Where evidence is susceptible to more than one rational interpretation, the ALJ's decision should be upheld." *Ryan v. Comm'r of Soc. Sec.*, 528 F.3d 1194, 1198 (9th Cir. 2008).

Under Social Security Administration ("SSA") regulations, disability claims are evaluated according to a five-step sequential evaluation. *Reddick v. Chater*, 157 F.3d 715, 721 (9th Cir. 1998). At step one, the Commissioner determines whether a claimant is currently engaged in substantial gainful activity. *Id.*  If so, the claimant is not disabled. 20 C.F.R. § 404.1520(b).  At step two, the Commissioner determines whether the claimant has a "medically severe impairment or combination of impairments," as defined in 20 C.F.R. § 404.1520(c). *Reddick*, 157 F.3d 715 at 721.  If the answer is no, the claimant is not disabled. *Id.*  If the answer is yes, the Commissioner proceeds to step three, and determines whether the impairment meets or equals a listed impairment under 20 C.F.R. § 404, Subpart P, Appendix 1. 20 C.F.R. § 404.1520(d).  If this requirement is met, the claimant is disabled. *Reddick*, 157 F.3d 715 at 721.

If a claimant does not have a condition which meets or equals a listed impairment, the

fourth step in the sequential evaluation process is to determine the claimant's residual functional capacity ("RFC") or what work, if any, the claimant is capable of performing on a sustained basis, despite the claimant's impairment or impairments. 20 C.F.R. § 404.1520(e). If the claimant can perform such work, he is not disabled. 20 C.F.R. § 404.1520(f).  RFC is the application of a legal standard to the medical facts concerning the claimant's physical capacity. 20 C.F.R. § 404.1545(a). If the claimant meets the burden of establishing an inability to perform prior work, the Commissioner must show, at step five, that the claimant can perform other substantial gainful work that exists in the national economy. *Reddick*, 157 F.3d 715 at 721. The claimant bears the burden of proof at steps one through four. *Bustamante v. Massanari*, 262 F.3d 949, 953-954 (9th Cir. 2001). The burden shifts to the Commissioner at step five. *Id.* at 954.

### III.    DISCUSSION

Plaintiff challenges the ALJ's decision on three grounds: (1) the ALJ failed to adequately account for all of Plaintiff's impairments; (2) the ALJ failed to consider Plaintiff's RFC before and immediately following her spinal laminectomy surgery; and (3) the ALJ's errors are not harmless. (Pl.'s Mot. at 5-8.)

#### A.    Whether the ALJ's RFC Finding Accounts for all of Plaintiff's Impairments

Plaintiff argues that the ALJ failed to account for all of her impairments, specifically her depressive disorder. (*Id.* at 5.) "An impairment or combination of impairments is not severe if it does not significantly limit one's physical or mental ability to do basic work activity." 20 C.F.R.§404.1521(a). In determining the severity, the ALJ must consider the combined effect of all impairments. *See* 42 U.S.C. § 423(d)(2)(B) (1999).  Here, the ALJ found that Plaintiff's depressive disorder does not cause more than minimal limitation in her ability to perform basic mental work activities and is, therefore, nonsevere. (AR 34.)  The ALJ made the determination after considering four broad areas of mental functioning, known as the "paragraph B" criteria, set out in the disability regulations for evaluating mental disorders and in the Listing of Impairments. (*Id.*) The ALJ reached the conclusion that Plaintiff has mild limitations in understanding, remembering, or applying information; no limitation in interacting with others; mild limitations in concentrating, persisting, or maintaining pace; and mild limitations in adapting or managing. (*Id.*)

3

The ALJ made these determinations based on the treatment records, the medical opinions, and Plaintiff's admitted activities. (*Id*.)  For example, Plaintiff was able to continue working at a part-time job where she was expected to take orders and help put together floral arrangements. (*Id*.)  Additionally, Plaintiff reported living with roommates and working at a job that required her to interact with the public and coworkers, and she did not describe any interpersonal difficulties. (*Id*.)

Plaintiff contends that the ALJ erred because the ALJ failed to incorporate any mild mental limitation in Plaintiff's RFC. (Pl.'s Mot. at 5.)  However, the ALJ specifically indicated that the RFC finding reflects the degree of limitation the ALJ has found in the "paragraph B" mental function analysis. (AR 35.)  "When an ALJ performs the Paragraph B analysis and indicates the 'degree of limitation' is incorporated into the RFC, this is sufficient to carry the burden imposed by the Regulations." *Van Houten v. Berryhill*, No. 1:17-CV-01238-JLT, 2019 WL 691200, at *14 (E.D. Cal. Feb. 19, 2019).  The ALJ discussed at length that, in assessing Plaintiff's RFC, the ALJ considered Plaintiff's testimony, function reports and questionnaires regarding Plaintiff's alleged symptoms and limitations. (AR 37-38.)  The ALJ found that Plaintiff's allegation concerning the intensity, persistence and limiting effects of her symptoms are inconsistent with the objective evidence of record. (AR 38.)  Further, Plaintiff was able to engage in a somewhat normal level of daily activity and interaction, including caring for her personal needs independently, working on the computer, using public transportation, and socializing with friends. (*Id*.)  Plaintiff also admitted working on a part-time basis. (*Id*.) Although Plaintiff's part-time work did not rise to the level of substantial gainful activity, it shows that Plaintiff was not as limited as alleged. (*Id*.)  The ALJ concluded that the physical and mental capabilities required to perform the tasks described above replicate those necessary for obtaining and maintaining employment. (*Id*.)

Furthermore, Plaintiff concedes that she had mild limitations. (Pl.'s Mot. at 5.)  Plaintiff argues that the ALJ should have considered the nature of Plaintiff's past work and her mental ability to return to her stressful and fast-paced job. (*Id*. at 6.)  The Court finds this argument lacks merit, because there are other jobs that exist in the national economy that the ALJ found that Plaintiff could perform.  Plaintiff asserts that the ALJ failed to consider the unique factors of her case. (*Id*.) However, Plaintiff did not identify any specific unique factors that allegedly

undermined the ALJ's RFC assessment. Other than citing articles describing all call center jobs, Plaintiff cites no legal authority that shows any connection between the unidentified "unique factors" of her case and the ALJ's RFC assessment of her mild limitations. Thus, she has failed to carry her burden that the ALJ erred in his RFC assessment or that she cannot perform her past relevant work as a telemarketer.

Given the evidence concerning Plaintiff's abilities and activities identified by the ALJ's opinion, the Court finds that the ALJ properly considered Plaintiff's depression and did not err in his RFC assessment.

### B. Plaintiff's RFC Before and Immediately Following the Spinal Laminectomy

Plaintiff contends that the ALJ did not consider "changes that may have occurred between the pre-surgical, recovery, and post-surgical periods." (Pl.'s Mot. at 7-8.) In opposition, Defendant argues that Plaintiff does not identify any specific changes or explain how the ALJ's RFC assessment failed to accommodate for said changes. (Def.'s Opp'n at 9.) Indeed, the ALJ considered relevant evidence in the record related to Plaintiff's back impairment in making the RFC assessment. (AR 38-39.)

In the ALJ's findings, Plaintiff presented with back pain, tenderness, and leg symptoms after injuring her back in July 2014. (AR 38.) An MRI of the lumbar spine performed in October 2014 revealed degenerative disc changes at multiple levels. (AR 39.) The ALJ noted that the records showed Plaintiff received chiropractic treatment with improvement and decreased pain levels. (*Id.*) A repeat MRI scan performed in January 2015 revealed similar findings. (*Id.*) Plaintiff underwent lumbar laminectomy in August 2015. (*Id.*) Plaintiff was discharged after the surgery with a front wheel walker in September 2015. (*Id.*) The ALJ found that the records following Plaintiff's surgery documented minimal treatment, and the findings from the physical examination failed to document any focal neurological deficits. (*Id.*) In May 2017, Plaintiff complained of chronic back pain and reported that she never received physical therapy. (*Id.*) The ALJ determined that the findings from the physical examination were unremarkable as the treatment plan included consideration of physical and/or occupational therapy. (*Id.*) Finally, the ALJ considered the totality of the evidence, including Plaintiff's history of back surgery, and

assessed greater limitations than the opinion of the state agency physician, who opined that Plaintiff was capable of performing a range of light-exertion work. (*Id.*)

Lastly, Plaintiff appears to argue that the ALJ may not have considered her pre-surgical condition in the RFC. (Pl.'s Mot. at 8.) This argument is unavailing, because the RFC determination should be based on her physical ability post-recovery.

Based on the forgoing, the Court finds that the ALJ did not err in failing to consider Plaintiff's RFC before and immediately following her spinal laminectomy surgery.

### C. Whether the ALJ's errors were harmless.

Finally, Plaintiff argues that the ALJ's errors were not harmless and warrant remand. (Pl.'s Mot. at 8.) Plaintiff bears the burden of demonstrating there are harmful errors in the ALJ's decision. *Shinseki v. Sanders*, 556 U.S. 396, 410 (2009). A decision of the ALJ will not be reversed for errors that are harmless. *Burch v. Barnhart*, 400 F.3d 676, 679 (9th Cir. 2005). "Where evidence is susceptible to more than one rational interpretation, it is the ALJ's conclusion that must be upheld." (*Id.*)

Plaintiff also argues that the ALJ erred in not finding that she was disabled pursuant to Grid rule 201.14, which mandates a finding of "disabled" for individuals of advanced age (50 years and above), who are limited to sedentary work, have a high school education, are unable to perform their past work, and do not have transferable skills to any other jobs that exist in significant numbers in the national economy. (Pl.'s Mot. at 8 (citing 20 C.F.R. Part 404, Subpart P, App. 2 § 201.14).) In opposition, Defendant contends that Plaintiff mistakenly believes that the grid rules unambiguously direct a finding of disability, but that the mistake is irrelevant because the ALJ found that Plaintiff could perform past relevant work. (Def.'s Opp'n at 11.) Since Plaintiff has not met her burden that she cannot perform her past relevant work at Step 4, there was no error. *See* discussion, *supra,* Part III.A.

In the present case, the Court finds that Plaintiff fails to establish harmful error, because she has not established that any error occurred. *See* discussions, *supra,* Part III.A-B. Thus, in the absence of any error, Plaintiff's motion must be denied on this basis.

### IV. CONCLUSION

For the reasons set forth above, the Court DENIES Plaintiff's motion for summary judgment, and GRANTS Defendant's cross-motion for summary judgment.

The Clerk may close the case.

IT IS SO ORDERED.

Dated: November 30, 2020

KANDIS A. WESTMORE
United States Magistrate Judge